# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARY SPIKES** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-0637** |
| | **JUDGE: LEMMON** |
| **LOUISIANA STATE UNIVERSITY** | **MAGISTRATE: ROBY** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU") (Doc. #31), is **GRANTED** as to plaintiff's sex discrimination and hostile work environment due to her sex claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq., and these claims are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to plaintiff's claims of sexual harassment and unlawful retaliation brought under Title VII.

### BACKGROUND

Plaintiff, Mary Spikes, filed this suit against LSU under Title VII alleging that while employed as a custodian at LSU's Baton Rouge campus she was the victim of sex discrimination, severe and pervasive sexual harassment, a hostile work environment due to her sex, and retaliation.

On March 12, 2007, Spikes began working as a custodian at LSU within the Department of Facility Services.[1] Spikes was initially assigned to the Center for Engineering and Business Administration Building ("CEBA"), and was supervised by Emanuel Harold. Spikes alleges that while working at CEBA, Harold physically and verbally sexually abused her. Spikes contacted LSU's Human Resources ("HR") Department and complained of Harold's behavior. After an investigation, LSU concluded that Harold had violated the university's policy on sexual harassment and tendered a termination letter to him with an option to resign. Harold resigned on July 18, 2007.

Spikes alleges her co-workers continued to sexually harass her after Harold's termination. Spikes complained to HR about her co-workers' behavior numerous times. Due to Spikes' sexual harassment complaints, she was transferred to three different buildings.

On February 29, 2008, LSU notified Spikes that she was being terminated for failing to meet expectations. Spikes alleges that her transfers to different buildings and termination were in retaliation for her complaining about sexual harassment by Harold and other co-workers.[2]

LSU filed a motion for summary judgment arguing that Spikes' allegations do not constitute sex discrimination, sexual harassment, a hostile work environment due to her sex, or retaliation.

---

[1] Spikes' employment status was "probationary." Pursuant to the Louisiana State Civil Service rules, a state employer has a period of between six and twenty-four months within which to evaluate an employee before making employment "permanent." LA. STATE CIVIL SERVICE RULE 9.1. During a probationary period, an employee can be terminated at any time "without cause". LA. STATE CIVIL SERVICE RULE 12.2.

[2] The specific instances of alleged misconduct by Harold and Spikes' co-workers will be set forth with particularity as those instances are relevant to the court's analysis of this motion.

2

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56©. If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B. Sexual Harassment Claims Under Title VII

Title VII provides that it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of sex discrimination under Title VII. The Supreme Court of the United States recognizes two types of sexual harassment claims: (1) claims that are based on requests for sexual

3

favors that result in adverse employment actions ("quid pro quo claims"); and (2) claims where bothersome attentions or sexual remarks create a hostile work environment. Faragher v. City of Boca Raton, 118 S.Ct. 2275 (1998); Burlington Indus. v. Ellerth, 118 S.Ct. 2257 (1998).

Plaintiff alleges in paragraph ninety-eight of her complaint that she was subjected to sex discrimination and a hostile work environment due to her sex. However, none of her factual allegations present any claims that: (1) others similarly situated were treated more fairly than she, or she was replaced by a male; or, (2) the sexual remarks which may have caused a hostile work environment were made because of her sex. In fact, the remarks had nothing to do with plaintiff's gender. Therefore, the claims of sex discrimination and hostile work environment due to her sex are DISMISSED.

Plaintiff also alleges in paragraph ninety-eight of her complaint she was subjected to severe and pervasive sexual harassment. Sexual harassment characterized as severe or pervasive, relates to a hostile work environment claim. Therefore, in construing plaintiff's pleadings so as to do justice[3], this court will treat plaintiff's claim of severe and pervasive sexual harassment as a hostile work environment claim.

**1. Hostile Work Environment Claims**

In order to establish a hostile work environment claim under Title VII, a claimant must show: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based upon sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) respondeat superior. Jones v. Flagship Int'l, 793 F.2d 714, 719-20 (5th Cir.

---

[3] Rule 8(e) of the Federal Rules of Civil Procedure.

1986).  "To affect a term, condition, or privilege of employment, 'sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.' " <u>Stewart v. Miss. Transp. Comm'n</u>, 586 F.3d 321, 330 (5th Cir. 2009) (quoting <u>National R.R. Passenger Corp. v. Morgan</u>, 122 S.Ct. 2061, 2074 (2002)).  If an employee brings a Title VII sexual harassment against a supervisor "with immediate (or successively higher) authority over the employee", the harassed employee need only satisfy the first four elements. <u>Watts v. Kroger Co.</u>, 107 F.3d 505, 509 (5th Cir. 1999).

In order to be actionable under Title VII, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Faragher</u>, 118 S.Ct. at 2283.  Whether an environment meets this standard depends on all the circumstances, "including frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." <u>Id</u>.  "Title VII was only meant to bar conduct that is so severe and pervasive that is destroys a protected class member's opportunity to succeed in the workplace." <u>Weller v. Citation Oil & Gas Corp.</u>, 84 F.3d 191, 194 (5th Cir. 1996).

    **a. Complaints of Sexual Harassment**

During her first month at CEBA, Spikes alleges that Harold: (1) told her "You're fine, and I want to f. . . you."; (2) kissed her on her cheek and patted her on her bottom on several occasions; (3) put his hand on her thigh and moved it up and down while giving her a ride home; (4) invited her into his office to view pornographic material; (5) had her listen in on a telephone conversation

Case 3:09-cv-00637-MVL -KWR   Document 23   11/03/11   Page 5 of 13

wherein another woman made offensive sexual comments; (7) offered to pay her in exchange for her stripping and shaking her bottom; and (8) had twice issued written reprimands to her claiming that, "If you had tried some of this, you might not be going through this."

While working at the Energy, Coast, and Environment Building ("ECE"), Spikes alleges that she was sexually harassed by her co-worker Karen Harris. Spikes alleges that Harris: (1) said Spikes was a "m. . . f. . . liar" when she denied having any type of sexual relationship with her former supervisor Harold; (2) spread sexually offensive rumors about her; (3) told a co-worker that Spikes and another co-worker, Justin Johnson, were engaging in oral sex together; (4) accused Spikes of making out with Johnson; (5) told her, "You know you gave that p. . . to Justin Johnson"; and (6) said, "You know you want to be his [Sherman Williams', a co-worker] woman." Spikes also alleges that when she complained to her supervisor about a sore neck, Harris said to co-workers that Spikes must have hit her head on the head board. Spikes states that during this same conversation another co-worker, Ederick Simpson, told Spikes, "The tail could take it but the neck couldn't." Spikes also alleges that during a Christmas party on December 13, 2007, Earl Jackson, the night manager at ECE and Spikes' former supervisor, made sexually offensive comments to her. Spikes alleges that while Jackson was taking pictures with female door prize winners he would state, "Don't touch, they may say sexual harassment."

When LSU notified Spikes that she was terminated for her alleged failure to meet department expectations, Spikes alleges that Mack Hogan, Spikes' supervisor at the Chemical Building, told her that he did not know if Jackson had fired her. Spikes states that Hogan then stated that if Jackson did fire her, it was because Spikes had filed a complaint against him in December 2007.

6

"A hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" AMTRAK v. Morgan, 122 S.Ct. 2061, 2074 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)). LSU contends that the above-mentioned acts are not sufficiently severe or pervasive to constitute a hostile work environment. When taken together and considering all the circumstances, the actions of Harold, Harris, and other co-workers raise a genuine issue of material fact regarding the severity and pervasiveness of their alleged sexual harassment of Spikes. Therefore, LSU is not entitled to summary judgment on Spikes' hostile work environment claim.

### b. Faragher/Burlington Defense

LSU contends that regardless of whether or not Spikes can prove her claim of hostile work environment, the claim fails if LSU can establish the Faragher/Burlington affirmative defense.

The Faragher/Burlington defense allows an employer that is subject to vicarious liability due to a hostile work environment claim to avoid liability by showing: "(1) the employer exercised reasonable care to prevent and correct promptly any sexually-harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm or otherwise." Donaldson v. CDB, Inc., 335 Fed. Appx. 494, 500 (5th Cir. 2009) (citing Burlington, 118 S.Ct. at 2271; Faragher, 118 S.Ct. at 2293).

Although LSU took prompt action to address the allegations of sexual harassment by Harold by terminating him and others by transferring Spikes, LSU cannot show that Spikes unreasonably failed to take advantage of any preventive or corrective opportunities provided by LSU to avoid harm. Spikes complained to various supervisors a total of eight times and filed three sexual

7

harassment complaints with the HR department. Because Spikes continuously alerted her supervisors and the HR department of her ongoing sexual harassment, LSU cannot satisfy the second prong of the Faragher/Burlington defense in this motion.

**C. Retaliation Claim**

    **1. Spikes'** ***Prima Facie*** **Case**

Spikes reported the incidents previously discussed above on several occasions.[4] She alleges that as a result of her reporting, LSU retaliated against her in violation of Title VII.

In order to establish a retaliation claim under Title VII, a claimant must show: (1) she participated in an activity protected by Title VII; (2) her employer took adverse employment action against her; and (3) a causal connection between the protected activity and the adverse employment action. Hernandez v. Yellow Transp., Inc., 641 F.3d 118, 129 (5th Cir. 2011). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." Cooper v. United Parcel Serv., Inc., 368 Fed. Appx. 469, 477 (5th Cir. 2010) (quoting McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007). However, "temporal proximity can only establish a causal link when it is

---

    [4] Spikes first complained about Harold's behavior to Joseph Robertson, a second line supervisor, then filed a sexual harassment complaint with Jennifer Doolos in LSU's HR Department in July 2007. Spikes complained about the behavior of Harris and other co-workers to her new supervisors, Mack Hogan and Doris Cotton, three times together, and five times to Cotton individually. On December 13, 2007, Spikes contacted Kim Gardiner of Facility Services and complained about the harassment she was subjected to by Harris. On December 14, 2007, Spikes filed a complaint with Michelle Brewer of LSU's HR Department stating how she was harassed by Harris and Ederick Simpson, and belittled by Jackson in retaliation for her sexual harassment complaints. On January 17, 2008, Spikes mailed a certified letter to Brewer disputing the results of LSU's HR Department's investigation into her December 14, 2007, complaint. On February 27, 2008, Spikes complained to Hogan about the all male floorteam sexually harassing her.

8

connected to the decision maker's knowledge of the protected activity." Thompson v. Somervell County, 2011 U.S. App. LEXIS 13630, *9 (5th Cir. 2011) (citing Clark Cnty. Sch. Dist. v. Breeden, 121 S.Ct. 1508, 1511 (2001) (per curiam) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close.") (internal quotations and citation omitted).

To establish the element of causation, Spikes must present either "direct evidence of retaliation" or "circumstantial evidence creating a rebuttable presumption of retaliation." Washburn v. Harvey, 504 F.3d 505, 510 (5th Cir. 2007). Direct evidence is "evidence which, if believed, proves the fact [in question] without inference or presumption." Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 415 (5th Cir. 2003). When direct evidence of retaliation is not available, "the familiar McDonnell Douglas burden-shifting framework applies." See Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007). Under this evidentiary framework, the plaintiff must first establish a *prima facie* case of discrimination. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2106 (2000). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the conduct. See Reeves, 120 S.Ct. at 2106. If the defendant meets this burden, the presumption raised by plaintiff's *prima facie* case disappears. Id.

Once the employer produces sufficient evidence to support a non-discriminatory explanation, the plaintiff is given an "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

9

Id. (internal quotation and citation omitted). The plaintiff must then demonstrate that the adverse employment action would not have occurred "but for" plaintiff's protected activity. Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

It is undisputed that Spikes engaged in Title VII protected activity when she complained to her supervisors and LSU's HR Department. 42 U.S.C. § 2000e-3. On February 29, 2008, LSU notified Spikes that she was terminated for her alleged failure to meet department expectations. This is clearly an adverse employment action.

During Spikes' probationary period with LSU, she complained numerous times to several different supervisors about sexual harassment by Harold, Harris, and other co-workers. Spikes' last complaint of alleged sexual harassment took place on February 27, 2008. That day Spikes complained to her supervisor, Hogan, that an all male floor-care team assigned to her building refused to buff one of the hallway floors upon her request. Spikes also alleges that one of the males told her, "You need a man in your life" and another male asked her, "Why did you do Emanuel Harold so bad?" Spikes alleges that Hogan spoke with her later that day and informed her that he had met with Jackson to discuss her complaint. Spikes alleges that Hogan told her that Jackson referred to her as a "trouble maker" and instructed Hogan to terminate her before she completed her probationary period. Two days later, on February 29, 2008, LSU notified Spikes that she was terminated.

Spikes' repeated complaints to her supervisors and LSU's HR department regarding the alleged sexual harassment, and her subsequent termination within the probationary period immediately after her last complaint, provide both a temporal proximity and causal connection

10

between Spikes' protected activity and her termination. Spikes has presented sufficient circumstantial evidence to create a rebuttable presumption of retaliation. Therefore, under the McDonnell Douglas burden shifting framework, LSU must provide a non-discriminatory justification for Spikes' termination.

**2. LSU's Non-Discriminatory Justification**

LSU states that it fired Spikes for poor performance and because she was unable to work with others. LSU attached three "Positive Discipline System Coaching Session" reports in its memorandum as evidence of Spikes' poor performance.

The first report, dated July 6, 2007, states that Spikes' performance was poor because she failed to complete a "task" by 10:00 p.m. The second report, dated December 10, 2007, states that Spikes was below her "leave balance." The third report, dated January 16, 2008, states that Spikes failed to follow building procedures by not staying with her cart.

LSU also attached an email sent by Jackson as evidence of Spikes' poor performance. The email stated that he inspected the Chemical Engineering Building were Spikes had been transferred and it was very dusty and the floors were dirty. Therefore, LSU has presented a non-discriminatory justification for Spikes' termination.

**3. Pretext**

Spikes contends that LSU's stated reasons for her termination were a pretext for unlawful retaliation. She points out that LSU's reports and Jackson's email are suspect. The first report states that Spikes failed to complete a task, but never indicates exactly what "task" Spikes failed to do. The second report states that Spikes was below her leave absences. However, Spikes claims that,

11

Case 3:09-cv-00637-MVL -KWR   Document 23   11/03/11 Page 11 of 13

besides taking one day off for a dental visit, all other absences were because of the stress and humiliation caused by the alleged sexual harassment. Spikes testified in a deposition on July 6, 2010, that she told her supervisor she needed to take off because she was sick from all the confusion and stress. Spikes also testified that she informed all of her supervisors of her need to take off and that one of her supervisors, Igor Matkovic, recommended that she go home. As to the report stating Spikes was not next to her cart, Spikes testified in her deposition that she had no knowledge of the report and had not seen it before her deposition. While Jackson's email states that the Chemical Engineering Building was dirty, Spikes alleges that her supervisor, Hogan, told Jackson that Spikes was a very good employee and was doing a great job at the building.

Spikes has demonstrated that there are genuine issues of material fact as to whether LSU terminated her for a legitimate, non-discriminatory reason or whether Spikes' alleged poor performance is a pretext for unlawful retaliation for reporting sexual harassment. Therefore, LSU is not entitled to summary judgment on Spikes' retaliation claim.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU") (Doc. #31), is **GRANTED** as to plaintiff's sex discrimination and hostile work environment due to her sex claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq., and these claims are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to plaintiff's claims of sexual harassment and unlawful retaliation brought under Title VII.

New Orleans, Louisiana, this __3rd__ day of November, 2011.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**

13